UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _22-mj-04140-AOR_____

IN THE MATTER OF
A SEALED COMPLAINT

_____/

FILED BY____dgj____D.C.
Dec 15, 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIA

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __Yes _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? ____ Yes _X_ No ____

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

ARTHUR G. WYATT, CHIEF
CRIMINAL DIVISION, NARCOTIC AND
DANGEROUS DRUG SECTION

By:  /s/ *Samantha Thompson*
SAMANTHA THOMPSON
Trial Attorney
Court ID A5502910
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
145 N Street, NE, 2nd Floor East
Washington, DC 20530
Telephone: (202) 532-4466
Email: Samantha.Thompson@usdoj.gov

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
| --- | --- | --- |
| v. | ) | |
| | ) | Case No. 22-mj-04140-AOR |
| Fernando Valencia Marin, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

**CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  Dec. 2017 through July 2018  in the county of  Miami-Dade  in the
  Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1960 | Unlicensed money transmitting business |
| 18 U.S.C. § 371 | Conspiracy |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

FBI SA Matthew Johnston
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  Face Time 

Date: 12/15/22

*Judge's signature*

City and state:  Miami, Florida    Hon. Alicia M. Otazo-Reyes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Matthew Johnston, Special Agent with the Federal Bureau of Investigation ("FBI"), having been first duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 2015. Prior to becoming a Special Agent, I worked as an Intelligence Analyst for the FBI for approximately five years, assisting with multi-national narcotics trafficking and money laundering investigations. I attended the FBI Academy, a 22-week instructional academy in which I was trained regarding investigative techniques, the execution of search warrants, and substantive topics including how drugs are sold, the practices and procedures utilized by narcotics traffickers and money launderers to avoid detection by law enforcement officers. I am also a graduate of Top Gun, a law enforcement training course focused on the investigation and prosecution of gang, gun, and drug cases, and have received training from the Organized Crime Drug Enforcement Task Force (OCDETF) on financial investigations. I have also consulted with other experienced investigators concerning the practices of drug traffickers and money launderers and the best methods of investigating them.

2. I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and am therefore empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Sections 1956 and 1960.

3. My experience as a Special Agent has included, among other things, the investigation of cases involving offenses enumerated in Title 18, United States Code, Section 2516,

1

including narcotics trafficking and money laundering offenses. As a Special Agent with the FBI, I have assisted with narcotics and money laundering investigations in the past that involved the utilization of electronic and physical surveillance. I have interviewed suspects who have personally participated in illegal narcotics activities. I have been involved in the execution of more than 100 search warrants related to narcotics trafficking investigations, which resulted in the seizure of various forms of contraband and evidence of the aforementioned criminal activities.

4. I have conducted and participated in numerous investigations into the unlawful importation, possession with intent to distribute, distribution of controlled substances, and related conspiracies, including the use of a communication facility such as a cellular or smart phone to facilitate the commission of a drug offense and the laundering of drug proceeds.  In conducting these investigations, I have utilized a variety of investigative techniques and resources, including physical surveillance, electronic surveillance, subpoenas, and various types of informants and cooperating sources.  Through these investigations, my training and experience and conversations with other agents and law enforcement personnel, I am familiar with the methods used by illicit drug traffickers to smuggle and safeguard illicit drugs, to distribute illicit drugs, and to collect and launder illicit drug proceeds.  I have not necessarily included in the affidavit each and every fact known to me about the matters set forth herein, but only those facts and circumstances that I believe are sufficient to establish probable cause for the Court to authorize a criminal complaint.

5. The statements in the affidavit are based upon my investigation, information provided by other individuals, including sworn law enforcement officers and confidential sources, and

upon my experience and training as a federal agent and the experience and training of other federal agents.

6. All dates, times, and amounts stated herein are approximate.

7. This affidavit is made in support of a criminal complaint charging defendant Fernando Valencia Marin with conspiracy to conduct, control, manage, supervise, direct, or own all or part of an unregistered money transmitting business, in violation of Title 18, United States Code, Sections 1960(a) and 371.

8. Pursuant to Title 18, United States Code, Sections 1960(a), it is unlawful to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business. Relevant to this affidavit, a money transmitting business is unlicensed if it is (a) "operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or felony under state law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable," Title 18, United States Code, Section 1960(b)(1)(A), or (b) if it "fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section," namely to register with FinCEN, Title 18 United States Code, Section 1960(b)(1)(B).

### Fernando Valencia Marin and Others Involved

9. Fernando Valencia Marin ("MARIN") is a citizen of Colombia and legal permanent resident of the United States who lives in Miami, Florida. MARIN conspired with money launderers and others described below to move and accept large sums of money from the United States to Colombia though an informal, unregistered money transmitting business.

10. Conspirator 1, who is described further below, is an additional uncharged member of the conspiracy with MARIN.

## PROBABLE CAUSE

11. The conspiracy in this case took place from in or about December 2017 until in or around July 2018, with a money laundering scheme involving approximately 1.2 million U.S. Dollars ("USD") in bulk currency moved from the United States to Colombia via the Black Market Peso Exchange ("BMPE").

12. The BMPE is a form of trade-based money laundering (TBML). TBML uses the international movement of funds as payments for goods and services to hide and transport illicit dollars. The BMPE is the most common form of TBML. It provides a way for narcotics traffickers to move large sums of drug proceeds and Colombian business to avoid exchange rates and fees covertly. Under the BMPE, a peso broker or professional money launderer uses narcotics proceeds in the United States to pay for the goods needed by a Colombian business. In doing so, the broker receives payment for the goods from the Colombian business, usually in the form of Colombian pesos ("COP"). The broker then turns over that money in Colombia, minus his profit, to the narcotics dealer. Through this cycle, drug money in the United States is moved to Colombia without the knowledge of the United States or Colombian Governments.

13. The facts of the conspiracy set forth below are evidence by electronic communications and documents, government records, financial records, recordings of in person meetings, and confidential source ("CS") and witness statements.

14. In or about December 2017, according to a CS[1] MARIN introduced Conspirator 1 to the CS knowing Coconspirator 1 and the CS had similar operations moving money through the BMPE. As part of a business arrangement, CS, Conspirator 1, and MARIN agreed that CS and Conspirator 1 would assist one another in moving large amounts of bulk U.S. currency from the United States to Colombia. The three also agreed that MARIN would receive one percent of the proceeds of each successful transaction, or 100 COP for each 1 USD transferred.

15. Under the scheme, the CS with the help of the CS's network of money movers, would work with Conspirator 1 to conduct bulk pickups of narcotics proceeds in numerous U.S. cities, move the money through third-party bank accounts, including South Florida-based companies doing business in Colombia, and ultimately deliver the COPs to MARIN and Conspirator 1 in Colombia as part of their initial agreement.

16. In January 2018, Conspirator 1 and the CS arranged a successful pickup of 217,000 USD in Atlanta, Georgia. The money was wired through 16 different bank accounts, 15 of which were based in Miami-Dade County. Days later, they arranged a series of pickups and drops of COPs in Colombia. 22,000,000 COP was paid to a courier sent by MARIN.

17. In January and February 2018, Conspirator 1 and the CS arranged successful pickups of 99,800 USD in Darien, Illinois and 108,527 USD in Willowbrook, Illinois. Some of the

---

[1] The CS is motivated to cooperate with FBI to receive leniency on prior criminal conduct, as well as, to receive lawful residency within the United States. To date, he/she has not been charged in federal or state court. The CS has no prior convictions. The CS has received no financial remuneration for his/her assistance in this investigation or for his/her cooperation with FBI but did receive financial payments in relation to cooperation with another federal law enforcement agency. This federal law enforcement agency discontinued cooperation with the CS after the CS routed an undercover virtual currency transaction through a personal wallet. The CS did not conceal or financially benefit from the transaction.

pickup money was moved through three different South Florida business accounts. A few days later, a bulk drop of COPs was conducted in Colombia for payment to MARIN and Conspirator 1 according to the agreement.

18. In February 2018, Conspirator 1 and the CS arranged a successful pickup of 108,480 USD in Chicago, Illinois, and a money order deposit totaling 68,900 USD. The money was moved through four bank accounts belonging to South Florida businesses. The agreed payment to MARIN occurred days later in Colombia.

19. In April 2018, Conspirator 1 and the CS arranged a successful pickup of 189,895 USD in Durham, North Carolina. On the same date as the pickup, payments were made to Conspirator 1 and MARIN in Colombia. Conspirator 1 requested a portion of his payout be made to MARIN. This amount, 7,600,000 COP, was in addition to the 18,900,000 COP that MARIN was paid as commission under the standing agreement.

20. Later in April 2018, Conspirator 1 and the CS arranged a successful pickup of 145,560 USD in Durham, North Carolina. Two days later, payments were made in Colombia to Conspirator 1 and to a courier sent by MARIN.

21. Also in April 2018, Conspirator 1 and the CS arranged a successful pickup of 143,500 USD in Independence, Missouri. Some of the pickup money was wired through bank accounts of South Florida businesses. Several days later, after a series of money drops in Colombia, a courier for MARIN was provided with 14,350,000 COP as commission for this transaction.

22. In July 2018, Conspirator 1 and the CS arranged a successful pickup of 249,444 USD in Morrisville, North Carolina. Days later, after a series of drops and pickups, a courier for

MARIN was provided 24,944,000 COP in Colombia for his commission as part of the standing agreement.

23. At no time was Conspirator 1, the CS, MARIN, or any business incorporated in Florida in MARIN's name (a) registered as a money transmitting business with FinCEN or (b) licensed to engage in the business of transmitting money by the States of Florida, North Carolina, Missouri, Georgia, or Illinois, as required by law. Failure to register as a money transmitting business in Florida, North Carolina, Missouri, Georgia, and Illinois is a crime under state law.

## CONCLUSION

24. Based on the foregoing, probable cause exists to prove that, from in or about December 2017, through in or about July 2018, in Miami-Dade County, in the Southern District of Florida, Colombia, and elsewhere, the Fernando Valencia MARIN, did conspire to knowingly conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business, as that term is defined in Title 18, United States Code, Section 1960(b), by agreeing to the transferring funds within and outside this country, on behalf of the public by any and all means including couriers, which affected interstate and foreign commerce, and which was operated without an appropriate money transmitting license in the States of Florida, Georgia, Missouri, North Carolina, and Illinois, where such an operation was punishable as a felony, and without registering as a money transmitting business with FinCEN as required by Section 5330 of Title 31, United States Code and the regulations prescribed thereunder, all in violation of Title 18, United States Code, Sections 1960(a), and 371.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
MATTHEW JOHNSTON
FEDERAL BUREAU OF INVESTIGATION

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time on 15th day of December 2022.

_____
HON. ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA